UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                :

In the Matter of the Application of        :

MINEFINDERS CORPORATION LTD.,   :

                Petitioner,                  :
                                                :            08 Civ. 6319 (NRB)

                -against-                    :

AUSENCO INTERNATIONAL PTY LTD.,  :

                Respondent.                :
                                                :
------------------------------------------------------------x

### DECLARATION OF GARY K. GANTNER IN OPPOSITION TO MINEFINDERS' APPLICATION FOR A STAY OF ARBITRATION

I, GARY K. GANTNER, declare as follows:

1. I submit this declaration in support of the memorandum of law of Ausenco International Pty Ltd. opposing the application by Minefinders Corporation Ltd. for a stay of arbitration in the above-captioned case. The information in this declaration is based on my personal knowledge.

2. I am an currently an independent consultant in the mining industry. I reside in Golden, Colorado.

3. From 2005 until early 2007, I was President of Ausenco Americas, LLC ("Ausenco Americas"), an affiliate of Ausenco International Pty Ltd ("Ausenco"). Prior to holding that position, I spent approximately thirty years in the mining business, with a focus on engineering and construction.

4. In my capacity as President of Ausenco Americas, LLC, I oversaw the negotiation of two agreements related to the Dolores Mine in Chihuahua, Mexico: the

Agreement for Engineering Services dated as of January 2, 2006 (the "AES") and the Construction Management Agreement dated as of July 13, 2006 (the "CMA"). I had final approval on those agreements and signed both agreements on behalf of Ausenco Americas and Ausenco.

5.  I understand that in this lawsuit, Minefinders contends that it is not obligated to arbitrate a claim that Ausenco has made against it that arises out of the CMA. This argument is contrary to my experience and my understanding while supervising the negotiation and execution of the AES and the CMA. The party that I dealt with in connection with those contracts and the Dolores Mine project was Minefinders, not its subsidiary CMD.

6.  I and others at Ausenco consistently dealt with Minefinders – not CMD – with respect to all issues leading to the engagement of Ausenco in connection with development of the Dolores Mine.

7.  First, Minefinders was the entity with whom Ausenco dealt before any formal agreements were finalized. Before and while the CMA and the AES were negotiated, Ausenco and/or Ausenco Americas had already begun to provide certain services in connection with the Dolores Mine. Because Ausenco needed to get written agreements in place related to those services, I spoke personally with Mark Bailey, the President of Minefinders, to encourage him to move that process along. That conversation helped expedite negotiations.

8.  In addition, before the CMA was finalized and executed, I visited Minefinders' headquarters in Vancouver on more than one occasion in order to arrange payments to Ausenco for services being provided at that time. I dealt with Minefinders personnel on these visits.

9. Second, the party with whom Ausenco negotiated the Dolores Mine contracts was Minefinders, not CMD. Ausenco's internal counsel, James Yeates, and others negotiated the agreements with Minefinders. I understood then and now that the individual with whom my colleagues were negotiating was Todd Fayram, a Vice President of Minefinders. Prior to the actual preparation of written agreements, I had also personally discussed Ausenco's engagement at the Dolores Mine with Mr. Fayram.

10. Mr. Fayram, who was assisted by a Vancouver-based lawyer during the negotiation of the written agreements, was representing Minefinders in those negotiations. I viewed the existence of CMD – which is based in Mexico, not in Vancouver – as merely cosmetic because the Dolores Mine has been a long-standing project of Minefinders, and it was Minefinders that was negotiating the agreements with Ausenco.

11. Third, during the negotiations, Ausenco and Minefinders designated myself and Mark Bailey, the President of Minefinders, as "Senior Executives" on Schedule 7 to the CMA. This meant that if a dispute arose, Mr. Bailey and I were supposed to try to resolve the dispute through negotiation pursuant to article 17(b) of the CMA. In other words, the CMA provided for Ausenco to take its disputes to Minefinders before the dispute went to arbitration.

12. Fourth, representatives of Minefinders – not CMD – signed the CMA. Mr. Fayram signed for "the Company." His witness was Tench C. Page, Vice-President of Exploration at Minefinders.

13. Fifth, it was Minefinders that directed its subsidiary, CMD, to sign the CMA, in order to benefit Minefinders. It was and remains my understanding that Minefinders

had CMD become the signatory to the CMA because doing so created potential tax advantages for Minefinders.

        14.    Sixth, after the CMA was signed and while I served as President of Ausenco Americas, LLC, it is my belief that payments to Ausenco for services being provided in connection with the Dolores Mine were always made from Minefinders in Vancouver, not from CMD or from any entity located in Mexico.

I declare under penalty of perjury that the foregoing is true and correct.

Executed July 21, 2008

                                                        Gary K. Gantner